**JASON I. SER**
California State Bar No. 201816
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
jason_ser@fd.org

Attorneys for Mr. Calderon-Quinonez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE ROGER T. BENITEZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>LUIS CALDERON-QUINONEZ,<br>Defendant. | Case No.: 07cr3408-BEN<br>Date: April 21, 2008<br>Time: 2:00 p.m.<br>**STATEMENT OF FACTS AND POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS** |

## I.

## STATEMENT OF FACTS[1]

Mr. Calderon-Quinonez incorporates by reference the statement of facts previously provided to the Court. He provides the following statement in support of the instant motion based upon new discovery received since the last filing, including the recorded interrogation at the Calexico, California Port of Entry. Part of that interrogation has been transcribed by a Spanish interpreter and is attached hereto as Exhibit A.

At approximately 2:05 p.m. on December 5, 2007, Mr. Calderon-Quinonez was ordered out of his car by a customs inspector who had commanded he stop and placed a tire deflation device beneath one of

[1] The following statement of facts is based on materials received from the government. The facts alleged in these motions are subject to elaboration and/or modification at the time these motions are heard. Mr. Calderon-Quinonez reserves the right to take a position contrary to the following statement of facts at the motions hearing and at trial.

the vehicle's front tires. Mr. Calderon-Quinonez subsequently was taken to a security office at the port, where officers conducted a patdown. He was then placed into a holding cell.

Some time thereafter, Mr. Calderon-Quinonez was brought to a small interrogation room, where three officers were present with him. The interrogation session was videotaped. Prior to administering warnings pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), the officers asked Mr. Calderon-Quinonez a series of questions pertaining to a variety of information, including biographical. During this pre-Miranda questioning, however, Mr. Calderon-Quinonez was asked about drug use and, in response to the officers' inquiries, informed them of alleged marijuana use in his past.

Subsequent to reading the Miranda warnings from a preprinted form and having Mr. Calderon-Quinonez initial the form, the officers' questioned Mr. Calderon-Quinonez. He made statements in response to those questions. This give and take, which spans several minutes, is reflected in the attached transcript and gives rise to the motion below.

## II.

## THE COURT MUST SUPPRESS STATEMENTS MADE BY MR. CALDERON-QUINONEZ

### A. The Pre-*Miranda* Questioning Exceeded the Routine Booking Question Exception.

In Pennsylvania v. Muniz, 496 U.S. 582 (1990), the Supreme Court acknowledged existence of the "routine booking question" exception, which exempts from Miranda's coverage questions to secure the " 'biographical data necessary to complete booking or pretrial services.' " Id. at 601-02. The Court, however, was careful to note that "[r]ecognizing a 'booking exception' to Miranda does not mean, of course, that any question asked during the booking process falls within that exception. Without obtaining a waiver of the suspect's Miranda rights, the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions." Id. at 602, n.14 (citing United States v. Mata-Abundiz, 717 F.2d 1277, 1280 (9th Cir. 1983)).

Under Ninth Circuit precedent, including Mata-Abundiz, the routine gathering of background or "booking" information ordinarily does not constitute interrogation. See United States v. Booth, 669 F.2d 1231, 1238 (9th Cir.1981); United States v. Perez, 776 F.2d 797 (9th Cir.1985). However, the "ultimate test for whether questioning constitutes interrogation is whether, in light of all the circumstances, the police

should have known that a question was reasonably likely to elicit an incriminating response." Booth, 669 F.2d at 1238.

Here, there is no question that asking Mr. Calderon-Quinonez questions pertaining to, at a minimum, drug use was likely to elicit an incriminating response. It did so. Thus, that statement, at a minimum, should be suppressed.

**B. General Interrogation Occurred Prior to A Valid *Miranda* Waiver.**

The Supreme Court's holding in Miranda provides that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Miranda, 384 U.S. at 444. In Dickerson v. United States, 530 U.S. 428 (2000), the Supreme Court held that Miranda rights are no longer merely prophylactic, but are of constitutional dimension. Id. at 2336 ("we conclude that Miranda announced a constitutional rule").

Once a person is in custody, Miranda requires that warnings must be given prior to any interrogation. See United States v. Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980). Those warnings must advise the defendant of each of his or her "critical" rights. United States v. Bland, 908 F.2d 471, 474 (9th Cir. 1990). Miranda requires that, once "the individual indicates in any manner, at any time *prior to or during* questioning, that he wishes to remain silent, the interrogation must cease." Miranda, 384 U.S. at 473-74 (emphasis added); United States v. Rodriguez-Gastelum, 569 F.2d 482, 487 (9th Cir. 1978). Similarly, "[i]f the individual states that he wants an attorney, the interrogation must cease *until an attorney is present*." Miranda, 384 U.S. at 474 (emphasis added). "These commands are clear on their face." California Attorneys for Criminal Justice v. Butts, 195 F.3d 1039, 1041 (9th Cir. 1999). The Supreme Court's holding in Miranda could scarcely be more clear in stating that, once a suspect "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease," and that if he "states that he wants an attorney, the interrogation must cease until an attorney is present." Id. at 1047 (quoting Miranda, 384 U.S. at 473-74). See also Davis v. United States, 512 U.S. 452, 458 (1994); McNeil v. Wisconsin, 501 U.S. 171, 176 (1991); Minnick v Mississippi, 498 U.S. 146, 152 (1990). The rule under these decisions is unmistakable. The Ninth Circuit in Cooper v. Dupnik stated that "[t]here is no question that the Constitutional holding in Miranda is 'clearly established' law." Cooper v. Dupnik, 963 F.2d 1220,

1237 (9th Cir. 1992). Accordingly, once a suspect who is in custody and is being interrogated asserts his right to remain silent, the interrogation must cease. See Michigan v. Mosley, 423 U.S. 96, 104 (1975). Invocation of the right to silence must be "scrupulously honored." Id. Failure by the police to cease interrogation after an invocation of the right to remain silent is a violation of the Fifth Amendment. See Cooper, 963 F.2d at 1252.

The government in this case did not "scrupulously honor" Mr. Calderon-Quinonez's invocation of his right to remain silent, thereby violating his due process rights. As the attached partial-transcription of the interrogation session indicates, Mr. Calderon-Quinonez expressly, unequivocally and unambiguously told three agents "No, well, no," he did not want to speak with them subsequent to having been provided his Miranda warnings. Any questioning by the agents, thus, should have ended at that time. The agents' interrogation of Mr. Calderon-Quinonez did not and suppression is warranted.

As if the first invocation were not enough, Mr. Calderon-Quinonez, in response to the very next question "And you don't want to talk?, told the agents "No, well yes." Although at first blush Mr. Calderon-Quinonez's statement may appear ambiguous, it is not. Mr. Calderon-Quinonez intended to inform agents by use of the word "no" that he did not want to waive his rights. His use of the phrase "well yes," thereafter, only intended to inform the agents' that he agreed with the question pending - that he in fact did not want to talk with them. Although the agents' subsequent statement regarding the nature of the criminal charge he faced may not have constituted express questioning for purposes of interrogation, what followed thereafter most certainly did.[2] Upon translating the nature of the charge, the agent asked "Do you understand that?" That question prompted Mr. Calderon-Quinonez to begin making statements regarding his arrest, including statements that he "didn't know" the drugs were in the truck.

---

[2] Even before the express question that followed, this recitation by the agents, at the least, was reasonably likely to elicit an incriminating response from Mr. Calderon-Quinonez. This tactic, too, violates Miranda. In Rhode Island v. Innis, 446 U.S. 291 (1980), the Supreme Court defined the phrase "functional equivalent" of express questioning to include "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301.

Lest there be any doubt that interrogation occurred prior to any waiver of Miranda by Mr. Calderon-Quinonez, one of the agents then asked "You didn't, didn't know?" Undoubtedly, this questions constituted interrogation as it bears upon an element of the offense: knowledge of the contraband's presence in the vehicle. Thus, any and all statements, thereafter, must be suppressed. These statements include, but are not limited to, having "just bought that truck" and "crossed a lot of times."

Because Mr. Calderon-Quinonez's statements were the product of pre-waiver custodial interrogation, the Court must suppress those statements as well as any derivative fruits, i.e., evidence discovered by the government as a result of the knowledge it obtained through the illegal interrogation of Mr. Calderon-Quinonez.

**C. Any Purported Waiver Was, at Best, Equivocal or Ambiguous and Warranted Clarification Before Any General Interrogation.**

Even if the Court views this statement "No, well yes" by Mr. Calderon-Quinonez as equivocal or somehow ambiguous, Ninth Circuit precedent required the interrogating agents to have sought clarification of Mr. Calderon-Quinonez's wishes concerning his Miranda rights prior to any interrogation. See United States v. Rodriguez, -- F.3d --, 2008 WL 623982, at *5 (9th Cir. Mar. 10, 2008); Nelson v. McCarthy, 637 F.2d 1291 (9th Cir. 1980); United States v. Rodriguez-Gastelum, 569 F.2d 482 (9th Cir.1978) (en banc). According to Rodriguez, "[p]rior to obtaining an unambiguous and unequivocal waiver, a duty rests with the interrogating officer to clarify any ambiguity before beginning general interrogation." Id. "In this case, the government cannot meet its 'heavy burden' of proving an initial knowing and intelligent waiver of Miranda with an ambiguous or equivocal reference to Miranda rights." Id.

**D. Irrespective of the Waiver Issue, All Statements Were Involuntary.**

Furthermore, any statements elicited by the interrogating agents were involuntary and not the product of free will given the coercive atmosphere and should be suppressed on this basis as well. This Court must make a factual determination as to whether a confession or statements were voluntarily given prior to their admission into evidence. 18 U.S.C. § 3501(a). Mr. Calderon-Quinonez accordingly requests that this Court conduct an evidentiary hearing pursuant to 18 U.S.C. § 3501(a), to determine, outside the presence of the jury, whether any statements made by him were voluntary.

## III.

## CONCLUSION

For these and all the foregoing reasons, the defendant, Mr. Calderon-Quinonez, respectfully requests that this Court grant his motions and grant any and all other relief deemed proper and fair.

Respectfully submitted,

DATED: April 7, 2008

*/s/ Jason I. Ser*
JASON I. SER
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Calderon-Quinonez
E-mail: jason_ser@fd.org

C:\Documents and Settings\Jason\FDSD\Calderon-Quinones3.wpd