UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE ROGER T. BENITEZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. LUIS CALDERON-QUINONEZ, Defendant. | Case No.: 07cr3408-BEN<br>TRIAL STIPULATION<br>Date: June 17, 2008<br>Time: 9:00 a.m. |

IT IS HEREBY AGREED between the Plaintiff, UNITED STATES OF AMERICA, through its counsel, Karen P. Hewitt, United States Attorney, and Christopher M. Alexander, Assistant U.S. Attorney, and Defendant, LUIS CALDERON-QUINONEZ, with the advice and consent of Jason I. Ser, Federal Defenders of San Diego, Inc., counsel for Defendant, hereby stipulate as follows:

1. By signing this stipulation, Defendant hereby waives his right to a jury trial; his right to call, confront, and cross-examine witnesses who would otherwise testify to the matters set forth herein; and his right, if Defendant wished, to testify on Defendant's own behalf.

2. This stipulation and the exhibits attached hereto shall be the sole evidence presented to the Court by either side. Defendant hereby waives his right to testify further or present a further defense, other than that referenced herein.

3. All exhibits and items referred to herein are deemed to have been admitted into evidence.

4. The two-count indictment in this case alleges that on or about December 5, 2007, within the

Southern District of California, defendant: (1) knowingly and intentionally imported 5 kilograms and more, to wit: approximately 32.54 kilograms (71.58 pounds) of cocaine, a Schedule II Controlled Substance, into the United States from a place outside thereof, in violation of Title 21, United States Code, Sections 952 and 960; and, (2) knowingly and intentionally possessed with the intent to distribute 5 kilograms and more, to wit: approximately 32.54 kilograms (71.58 pounds) of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

5. For the purposes of the court trial of Defendant on the two count the Indictment, the parties HEREBY STIPULATE AND AGREE, that the following would be the uncontroverted testimony of the United States' witnesses:

a. Customs and Border Protection Officer ("CBPO") Chris Alvarado would testify that:

1. On or about December 5, 2007, at approximately 12:26 p.m., Defendant approached the primary inspection booth at the Calexico West Port of Entry as the sole occupant and driver of a Chevrolet Silverado SUV, bearing Baja California, Mexico license plate #AHV8149 (hereinafter referred to as "the vehicle"). The Port of Entry and Calexico, California are within Imperial Country, which is in the Southern District of California.

2. At primary inspection, Defendant presented a valid DSP-150 (B1/B2 Visa), gave a negative customs declaration, and stated he was going to Calexico to shop at Las Palmas; Defendant and the vehicle were randomly selected by the Treasury Enforcement Communication System (TECS) for an agricultural inspection, prompting CBPO Alvarado to refer Defendant and the vehicle to secondary inspection.

b. CBPO Kathy Rivera would testify that:

1. At secondary inspection, Defendant presented a valid DSP-150 (B1/B2 Visa) and gave a negative customs declaration.

2. She sought an agricultural specialist to obtain an agricultural declaration from Defendant.

c. CBPO Leslie Ledbetter would testify that:

1. He was assigned to the secondary inspection lot and was asked to inspect the vehicle's rear side wall.

2. He removed the vehicle's door molding and pulled the paneling away from

the right rear quarter panel. He saw gray duct tape on the inner wall.

3. He then reached inside the inner wall and felt a package.

4. Thereafter, he suspended his inspection of the vehicle and spoke with CBPO Randolph, who identified Defendant as the driver of the vehicle.

5. He escorted Defendant to the vehicle secondary office and performed a pat-down, which was negative for contraband.

6. He then returned to the vehicle to continue his inspection. He removed the right rear sidewall panel and located packages wrapped in duct tape. He probed a package, which had not been removed.

7. When probed, the package produced a white powdery substance.

8. He conducted a field test of the white powdery substance with a test kit, which indicated that white powdery substance contained cocaine.

9. He, thereafter, informed Immigration and Customs Enforcement ("ICE") Special Agent Russell Vensk, Jr. of his observations.

10. He was instructed to not inform Defendant of his observations and permit Defendant to leave the Port of Entry. This was so that other officials at the Port of Entry could perform a "cold convoy," which entailed allowing Defendant to leave the Port of Entry and drive into the United States under his surveillance.

11. At approximately 1:55 p.m., Defendant drove out of the Calexico West Port of Entry followed by ICE agents. He was to man the southbound lanes at the Port of Entry in case Defendant attempted to return to Mexico.

12. At approximately 2:05 p.m., he observed the vehicle driving southbound toward the Port of Entry.

13. He, appearing in full uniform and visibly armed, motioned for Defendant to stop and placed a tire deflation device in front of the left front tire.

14. The vehicle was stopped in the Port of Entry's southbound lanes.

15. He approached the driver's side front door of the vehicle, asked Defendant to exit, escorted him to the vehicle secondary office, and placed him under arrest.

16. The vehicle was driven from the Port of Entry's southbound lanes to the secondary inspection area. After completing his search, he removed 14 packages from the vehicle's right rear quarter panel area and 12 packages from the vehicle's left rear quarter panel area, secured them and processed them for purposes of creating a chain of custody for future laboratory testing and introduction at trial.

17. The gross weight of the packaging and contents therein was 32.54 kilograms.

d. ICE Special Agent Russell Vensk, Jr.,would testify that:

1. He and other officials at the port of entry authorized a "cold convoy," which entailed allowing Defendant to leave the Port of Entry and drive into the United States under his surveillance.

2. At approximately 1:50 p.m., Defendant drove out of the Calexico West Port of Entry north on Imperial Avenue; thereafter, he turned east onto 3rd Street, where he parked on the south side of the street, got out of the vehicle, walked to the sidewalk, faced west, yelled to somebody, briefly talked on his cell-phone, and then returned to the vehicle.

3. Defendant then continued driving east on 3rd Street, turned north onto Heffernan Avenue, turned west onto 4th Street, and turned north onto Imperial Avenue; at 5th Street, Defendant made a u-turn and proceeded south on Imperial Avenue toward Mexico.

4. CBPO Ledbetter stopped the vehicle in the southbound lanes of Imperial Avenue at the Port of Entry.

5. He searched the vehicle's interior and found a Baja California vehicle registration listing "Luis Enrique Calderon Quinones" as the registered owner of the vehicle. The R.F.C. number on the registration matched the number on Defendant's Mexican identification.

6. From the time the vehicle left the Port of Entry until its return, it traveled about two miles.

e. A qualified forensic chemist would testify that:

1. He/she performed certain chemical analyses of the white powdery substance seized by CBPO Ledbetter.

2. Those analyses indicated the white powdery substance was cocaine.

3. The net weight of the cocaine was 25.96 kilograms.

f. A qualified value expert would testify that:

1. The amount of cocaine in this case, a net weight of 25.96 kilograms, is a distributable amount of cocaine.

2. A gross weight of 32.54 kilograms is approximately 71.58 pounds. The low end wholesale value of 71.58 pounds of cocaine in Mexicali, Mexico would be approximately $322,110.00. The low end wholesale value of 71.58 pounds of cocaine in Calexico, California would be approximately $608,430.00.

6. The defense does not contest that the evidence described above in the instant stipulation, including the cocaine admitted into evidence, is sufficient to establish the Defendant's knowledge beyond a reasonable doubt of the controlled substance hidden in the vehicle at the time he entered the United States.

SO STIPULATED.

Dated: 6/11/08 — X Luis E. Calderon Q.
Luis Calderon-Quinonez
Defendant

Dated: 6/11/08 — [signature]
Jason I. Ser
Counsel for Defendant

Dated: 6/16/08 — Christopher M Alexander
Christopher M. Alexander
Assistant U.S. Attorney